**Edwin MALDONADO, Petitioner,**

**v.**

**UNITED STATES of America, Respondent.**

**No. CV 95–1942.**

United States District Court, E.D. New York.

April 4, 1997.

Ruth M. Liebesman, New York City, for Petitioner.

Zachary W. Carter, United States Attorney Eastern District Of New York by Edward Rial, Assistant United States Attorney, Brooklyn, NY, for Government.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The petitioner Edwin Maldonado ("Maldonado" or the "petitioner") has applied for a Certificate of Appealability ("COA") from an Order of this Court dated February 15, 1997 denying his Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2255.

## I. BACKGROUND

In December, 1990, following a seventeen week jury trial, Maldonado was found guilty of violating the criminal RICO statute, 18 U.S.C. § 1962, conspiracy to possess more than 1 kilogram of heroin in violation of 18 U.S.C. § 1952(a)(3) and failure to register a firearm as a member of the "Unknown Organization." On May 10, 1991, Maldonado was sentenced by this Court to a term of incarceration of 220 months, to be followed by a five year period of supervised release, and he was ordered to pay a special assessment in the sum of $200.00. The conviction was affirmed on appeal by the Court of Appeals for the Second Circuit.

At the trial, the Government introduced evidence as to Maldonado's involvement in a conspiracy with regard to the transportation of guns for the massive drug organization known as the "Unknown Organization." Three gun dealers in Texas identified Maldonado as one of the purchasers of multiple firearms. There was also testimony from a Bureau of Alcohol, Tobacco and Firearms ("AFT") agent that Maldonado was observed purchasing guns in Texas. Sigfredo Pacheco, who was a co-conspirator of Maldonado and a Government witness, testified at the trial that he saw weapons in Maldonado's car and that he was told by Maldonado and Jerry Vega, who was a partner of Kingpin Ricardo Melendez, that Maldonado was transporting the weapons to New York. Joseph Ukperaj, who accompanied Maldonado on several trips, testified that he purchased weapons with Maldonado and delivered them to members of the "Unknown Organization." In addition, Juan Rivera, a major figure in the organization, and a witness cooperating with the Government, testified that one of Maldonado's jobs in the organization was to supply guns.

During the trial Maldonado subpoenaed records from the DEA and the ATF, in New York and Dallas, in an effort to discover information regarding one Demir Deskaj. The records were reviewed by the Court in camera and were found to be devoid of information regarding Deskaj's whereabouts.

## II. *DISCUSSION*

### A. *Certificate of Appealability*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or the "Act") provides that in order to appeal a denial of a petition for a Writ of Habeas Corpus, a "circuit justice or judge" must issue a certificate of appealability. *See* 28 U.S.C. § 2253(c). Section 102 of the AEDPA, amending 28 U.S.C. § 2253 added, among other provisions, the following language:

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issues by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

This amendment created a dispute as to whether a district court has the authority to issue a COA as a result of the ambiguity in the language Congress used in section 102 of the AEDPA to simultaneously amend both 28 U.S.C. § 2253 and Fed.R.App.P. 22. *See Lozada v. United States,* 107 F.3d 1011 (2d Cir.1997). The confusion stems from the language "[u]nless a circuit justice or judge issues a certificate of appealability." See 28 U.S.C. § 2253(c)(1) (as amended). The phrase could mean either "a circuit justice or a circuit judge" or "a circuit justice and either a circuit or district judge." *Id.* The issue is focused on the grammatical interpretation of whether "circuit" modifies only "justice" or both "justice" and "judge." *Lozada v. United States,* 107 F.3d 1011 (2d Cir.1997).

In *Lozada v. United States,* supra, the Second Circuit stated that the district court has the authority to issue a certificate of appealability in section 2254 cases. In *Loza-* da, the Court noted that "[t]his question has been comprehensively considered in the unanimous in banc opinion of the Eleventh Circuit in *Hunter [v. United States,* 101 F.3d 1565 (11th Cir.1996) (in banc)] which ruled that a district judge has authority to issue a COA." *Lozada,* supra, citing *Hunter,* 101 F.3d at 1573–83. The *Lozada* Court stated that they were fully persuaded by Judge Carne's analysis of both the ambiguous text and the legislative history, and they concur in his conclusions. *Lozada,* supra.

The Second Circuit further pointed out in *Lozada,* that prior to the AEDPA, it was clear that the predecessor of a COA, a certificate of probable cause ("CPC"), which was required for an appeal of the denial of a section 2254 petition, could be issued by a district judge. In *Lozada,* the Second Circuit noted that the "[i]f Congress wished to transfer the 'gate-keeping' function for appeals of section 2254 denials exclusively to the courts of appeals, it could be expected to make absolutely clear its intention as to such a significant restricting of appellate procedure." *Lozada,* supra.

The Second Circuit also stated in *Lozada* that pursuant to the AEDPA, the 'gate-keeping' function for second or successive section 2254 petitions have been expressly assigned to the court of appeals. *Lozada,* supra; *see also* AEDPA § 106, 28 U.S.C. § 2244(b) (as amended). The *Lozada* court wrote:

It is highly unlikely that Congress, after carefully crafting an express provision to divest the district courts of authority to entertain a second or successive habeas corpus petition, in the absence of court of appeals permission, would have ambiguously precluded the district courts from issuing a COA, which is the new version of former CPC. Such preclusion ought not be casually inferred from the grammatical possibility that "circuit" modifies both "justice" and "judge" in amended section 2253(c)(1), despite the contrary language of amended Rule 22(b). Congress knew how to restrict the role of district judges with respect to habeas corpus procedure, and made its intention to do so clear as to second or successive petitions, but not as to permission to appeal the denial of a first

petition ... We therefore uphold the authority of district judges to issue COAs, at least in section 2254 case.

With regard to appeals of Section 2255 petitions, the Second Circuit stated in *Lozada* that:

> [t]he only basis for doubt as to the authority of a district judge to issue a COA in a section 2255 case arises from the fact that the language of Rule 22(b), which provides considerable justification for construing 'circuit justice or judge in section 2253(c)(1) to include district judges, concerns 'a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court,' i.e., a section 2254 proceeding. Nevertheless, the caption of amended Rule 22 is "Habeas corpus and section 2255 proceeding," ... [t]he caption makes sense only if the district court authority to issue a COA in a section 2254 case also applies to a section 2255 case. [citation omitted]. Moreover, it would be extremely anomalous to read the phrase "circuit justice or judge" in section 2253(c)(1) to include a district judge for purposes of issuing a COA in a section 2254 case, but only a circuit judge for purposes of issuing a COA in a section 2255 case.

The Court also noted that a comparison of the appellate procedure in cases before and after the AEDPA presents another reason for construing 28 U.S.C. § 2253 and Rule 22 in combination to authorize a district court to issue COAs in section 2255 cases. Prior to the AEDPA, a CPC was required for appeal of a denial in section 2254 cases. However, a defendant whose section 2255 motion was denied could appeal directly to the court of appeals, without having to obtain the CPC. The *Lozada* court concluded that:

> By explicitly requiring a COA in order to appeal the denial of a section 2255 motion, as well as the denial of a section 2254 motion, Congress obviously wanted to make an appeal in the former case at least as restricted as an appeal in the latter case. But there is no indication that Congress wanted to make appeal in a section 2255 case more restrictive than appeal in as section 2254 case. The evident purpose

was to impose a threshold certification requirement on appeals in both types of cases. Authorizing district judges to issue a COA in both section 2254 and section 2255 cases is entirely consistent with that purpose. We therefore concluded that district judges have authority to issue COAs in section 2255 cases.

█ Thus, this Court concludes that it has the power and authority to issue a Certificate of Appealability of the denial of a Section 2255 petition under 28 U.S.C. § 2253 and Fed.R.App.P. 22.

### B. *Standard of review*

█ Title I, § 102 of the AEDPA provides that a "certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Second Circuit in *Reyes v. Keane,* 90 F.3d 676, 680 (2d Cir.1996) held that "the substantive standard for the a COA is the same as the standard for the prior CPC." *Reyes,* 90 F.3d at 680. Thus, a petitioner does not have show he should prevail on the merits in order to obtain a COA. Instead, he must "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 3395 n. 4, 77 L.Ed.2d 1090 (1983).

### C. *The petitioner's contentions*

Maldonado alleges that the Government made a false representation to the Court, with respect to its knowledge of the whereabouts of Deskaj, and the Court accepted this information as the truth. According to Maldonado, the Government intercepted Deskaj's voice by a wiretap in connection with an investigation of Deskaj. In support of this allegation, Maldanado submitted an unsigned criminal indictment, noted as CR 91–870 in the Southern District of New York, in which there is a reference to Deskaj as a supplier of cocaine and heroin (p. 4) and as an identifiable party in a November 13, 1990 telephone conversation (pp. 7–8). Maldonado argues that the indictment, which predated

Maldonado's subpoenas, demonstrates that the Government was aware of Deskaj's whereabouts, but did not disclose to the court either this information or the fact that it had this information.

Maldonado also contends that in a 1988 case in Texas, the Government opposed a bail application by the defendant Deskaj and "stated that Desjak was mentioned in 19 separate DEA investigations." See March 1, 1996 Reply by Petitioner, at 2 n. 1. Maldonado offers no support for this contention, but complains that the Government did not produce files relating to the alleged 19 investigations involving Deskaj's activities.

In addition, Maldonado's counsel alleges that she "was informed by Deskaj's appointed lawyer, Larry Bronson, that Deskaj is working for the government and has been doing so for several years, including the time period during which Maldonado was on trial." March 1, 1996 Reply by Petitioner, at 3. It is noted that there was no sworn statement submitted by Deskaj's attorney to support this contention.

It is Maldonado's theory that information regarding Deskaj's activities would have convinced the jury that the evidence concerning gun purchases by Maldonado in Texas for a heroin operation in Brooklyn, related to Deskaj's organization and not the Unknown Organization. According to Maldonado, this information would have supported his contention that there was a multiple conspiracy situation, which would have resulted in his acquittal. Maldonado claims that the Government's concealment of Deskaj's whereabouts deprived him of a fair trial.

D.   *The Courts prior determination with regard to the petition for a Writ of Habeas Corpus under 28 U.S.C. § 2255.*

   1.   *The petitioner failed to submit evidence to demonstrate that the Government knew of Deskaj's whereabouts*

During the criminal trial, the petitioner's counsel subpoenaed numerous documents and files from the DEA and the ATF, all of which were inspected *in camera* by the Court. Based on its review of those documents, the Court determined that the Government did not have information pertaining to the whereabouts of Deskaj.

The copy of an unsigned Southern District of New York indictment in CR 91–870, submitted by Maldonado in support of this petition, may be evidence that a Government agency conducted an investigation of Deskaj and others. However, these papers neither demonstrate that the prosecutor or investigators assigned to Maldonado's case actually had knowledge of his whereabouts, nor do they make evident the claim that there was a failure to inform the court of such information. Maldonado's claim that, during a 1988 Texas case, the Government stated that Deskaj was "mentioned in nineteen separate DEA investigations" is similarly unsubstantiated and does not serve to support the arguments advanced by the petitioner.

   2.   *No evidence has been presented as to the nature and content of Deskaj's testimony*

Even if the government did know where Deskaj was or could have located him, Maldonado failed to submit any evidence in support of his supposition as to what Deskaj's testimony would have been. Maldonado alleges that Deskaj would have testified that Maldonado was actually transporting guns for Deskaj. Maldonado claims that this would confirm that he purchased guns for a New York heroin business for Deskaj and Ukperaj and not for the Unknown organization as he was charged in the Melendez case. Therefore, according to the petitioner, the testimony of Deskaj would have supported a "multiple conspiracy" defense.

In the court's view, these unsupported allegations and suppositions are insufficient to support Maldonado's argument that Deskaj's testimony would have been exculpatory and critical to the defense. Significantly, Maldonado's petition is not supported by an affidavit regarding the allegedly exculpatory information that Deskaj would have offered.

   3.   *Maldonado's conviction was supported by overwhelming evidence*

■ Maldonado argues that his sentence should be vacated because potentially exculpatory evidence relating to a multiple con-

spiracy defense was not disclosed by the government. A multiple conspiracy defense may succeed where two components are present: (1) evidence that a defendant "was a member of a separate conspiracy other than the conspiracy charged in the indictment" and (2) insufficient evidence that the "defendant was a member of the conspiracy charged in the indictment." *See United States v. Aracri,* 968 F.2d 1512, 1520 (2d Cir.1992).

At the petitioner's trial, overwhelming evidence was introduced to support Maldonado's conviction for conspiratorial involvement with the "Unknown Organization." Three gun dealers in Texas identified Maldonado as a purchaser of firearms. An ATF agent testified to observing Maldonado purchase guns in Texas. The Government's witness and Maldonado's co-conspirator, Sigfredo Pacheco, testified to seeing weapons in Maldonado's car, in addition to his testimony that other members of the "Unknown Organization" informed him that Maldonado was transporting the weapons to New York. Joseph Ukperaj, who accompanied Maldonado on several trips, testified that he and Maldonado purchased weapons and delivered them to Unknown Organization members. The Government's chief cooperating witness, Juan Rivera, testified that one of Maldonado's duties in the Unknown Organization was to supply guns.

This testimony is strong direct evidence supporting Maldonado's conviction. Maldonado has not demonstrated that any material evidence was withheld by the Government, disclosure of which would have changed the outcome of Maldonado's trial. Assuming, for purposes of this petition, that Deskaj could have been located and would have testified that Maldonado purchased and delivered guns for his organization, in the Court's view, Maldonado would not have been acquitted by interposing a multiple conspiracy argument in the face of the overwhelming evidence of his activities as a co-conspirator and member of the "Unknown Organization."

E. *The Court's decision with regard to whether to issue a Certificate of Appealability*

   In the Court's view, the petitioner has not made the requisite showing that the Gov-

ernment failed to provide exculpatory and/or impeachment material at trial, and therefore, no certificate of appealability will be issued as to this claim. As discussed in this Court decision dated February 15, 1997 dismissing the petitioner's motion pursuant to 28 U.S.C. § 2255, there was overwhelming evidence to support Maldonado's conviction for his conspiratorial involvement with the "Unknown Organization" and Maldonado has not demonstrated that any material evidence was withheld by the Government, disclosure of which would have changed the outcome of the trial.

The Court finds that the petitioner has failed to make a "substantial showing of a denial of a constitutional right" to support the issuance of a Certificate of Appealability. In the Court's view, reasonable jurists could not disagree with the resolution of the petitioner's Habeas Corpus claim. Therefore, this Court declines to issue a certificate of appealability.

## III. *CONCLUSION*

Based on the foregoing, the petitioner Edwin Maldonado's application for a certificate of appealability, pursuant to 28 U.S.C. § 2253(c)(1), is denied.

**SO ORDERED.**